IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARNISSA N. T., § | |
|  PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:23-CV-1488-G-BK |
| § | |
| COMMISSIONER, SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
|  DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this appeal of the denial of Plaintiff's application for social security disability benefits is before the undersigned United States magistrate judge for findings and a recommended disposition. For the reasons detailed here, the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

 *A. Procedural History*

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). Doc. 1, *passim*. Plaintiff filed her application in July 2021, alleging a period of disability beginning in November 2018, and resulting from (1) problems with her neck, back, liver, and hearing; (2) arthritis in her hands and wrists; (3) osteoarthritis; (4) gallbladder removal and scarring; (5) anxiety; (6) depression; (7) migraines; and (8) herpes.[1] Doc. 12-1 at 27, 535, 539.

---

[1] At the administrative hearing, Plaintiff clarified that she never intended to claim that all these listed conditions were the basis of her inability to work. Doc. 12-1 at 415-416.

Plaintiff's claim was denied at all administrative levels, and she now appeals to this Court under 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff was 45 years old on her alleged onset date, had completed at least four years of college, and previously worked in "administration" in the military. Doc. 12-1 at 535, 540.

*i. Plaintiff's Hearing Testimony*

At the administrative hearing in October 2022, Plaintiff testified that she had not received mental health treatment or counseling since the previous year, reporting that she was dissatisfied with the counselor with whom she last spoke, and had not found anyone else she was "comfortable with." Doc. 12-1 at 404-406. Plaintiff also testified that since her discharge from the military, she was unable to work due to (1) pain from abdominal surgery scarring; (2) pain in her knees and feet; (3) general pain from her "feet, all the way up to [her] head"; and (4) weakness and a burning sensation in her hand that "runs from [her] fingers through [her] wrist and up to [her] forearm." Doc. 12-1 at 406-408. Plaintiff also stated that she suffered from debilitating migraine headaches two or three times per month, lasting three or four days and triggered by "stress [and] negative conversations," for which she isolates and takes ibuprofen since prescription medicine made it worse. Doc. 12-1 at 414.

As far as physical limitations, Plaintiff testified that she could stand for up to two hours, but that after that, getting off her feet made the pain worse, not better. Doc. 12-1 at 408-409. As for treatment, Plaintiff testified that she had been only received inserts for her shoes, which sometimes provided relief, and that surgical intervention had never been recommended for her knees or feet. Doc. 12-1 at 409-10. She also testified that walking and standing are equally painful. Doc. 12-1 at 410. As for her ability to lift and carry items, Plaintiff testified that a

"sensation" developed in her hand when she tried lifting five pounds during a workout and thus it would be difficult to lift 10 pounds every five minutes and carry that weight for two hours at a time. Doc. 12-1 at 411.

In the area of daily living activities, Plaintiff stated she cooks and cleans, but that it is painful and she must break up tasks into stages to complete them. Doc. 12-1 at 411. She reported that she drives, but anxiety causes her to grip the steering wheel "a little tight" so her hand starts "to drop" after about ten minutes of driving. Doc. 12-1 at 412. She testified that she could shop, bathe, shower, and toilet independently, but experienced stiffness or pain when she did so. Doc. 12-1 at 412. Plaintiff stated that she does not interact socially with people either by phone or in-person because she often feels as though she does not "have anything in common with some of the people [she has] tried to interact with, but admitted that she is able to interact with others "on a cordial level." Doc. 12-1 at 413.

*ii. Medical Evidence Relating to Mental Health Conditions*

During an initial assessment in August 2018, Plaintiff reported a lack of interest in things she used to enjoy, low energy levels, and irritability. Doc. 12-1 at 1092. After an evaluation that found Plaintiff, alert and oriented times 4, appropriately attired with adequate hygiene and good eye contact, pleasant and cooperative, with coherent, linear, logical and "goal directed" thought process, with intact memory but with "slowed" psychomotor and speech and depressed mood, Clinical Psychologist Scott Storm ultimately found that Plaintiff:

> does not meet criteria for major depressive disorder but in my opinion[,] she appears to be suffering from depression. She seemed rather distant interested in pursuing any further psychotherapy and refused to be evaluated for an antidepressant medication.

3

Doc. 12-1 at 1092-94. Storm further stated, *inter alia*, that it was "unlikely that [Plaintiff] will continue services despite being instructed to follow-up on a weekly or biweekly basis," and that she was "suitable/fit for continued military service." Doc. 12-1 at 1094.

At subsequent appointments, Dr. Janet L. Mueller, Psy.D., similarly noted that Plaintiff was cooperative and alert, with logical, coherent, and goal-directed thought and speech processes, but nevertheless deeming Plaintiff's mood/affect as "DEPRESSED-mild." Doc. 12-1 at 901-02. Plaintiff began cognitive behavioral therapy (CBT) with Dr. Mueller, which continued for approximately 10 months. Doc. 12-1 at 762-769, 775-85, 800-01, 813-15, 836-37, 870-71, 875-77, 884-85. During this same period, Dr. Mark R. Floyd, Ph.D., separately noted during a mental status examination that Plaintiff's mood was depressed but her cognitive function was intact, and he advised her to continue her treatment. Doc. 12-1 at 872.

In February 2020, Plaintiff reported to Elizabeth A. Gary, LCSW, that she had been feeling depressed and anxious for years. Doc. 12-1 at 752-53. Ms. Gary diagnosed major depressive disorder and conducted a psychotherapy session with Plaintiff. Doc. 12-1 at 754. Plaintiff continued such sessions with Ms. Gary into April 2020. Doc. 12-1 at 729-31, 735-36, 743-45, 747-48. But while undergoing treatment, Plaintiff's scores on related assessments, such as the Patient Health Questionnaire-9 and the Generalized Anxiety Disorder-7, generally indicated worsening symptoms. Doc. 12-1 at 662, 750, 753-54, 1093. However, Ms. Gary noted as late as March 2021, that Plaintiff was "not interested in medications." Doc. 12-1 at 663.

*iii. Evidence Relating to Physical Health Conditions*

Plaintiff sought treatment for various pain-related issues at the Veterans Administration clinic (VA). Approximately four months after she began psychological treatment in 2018, Plaintiff reported experiencing chest pain, left neck pain, and shortness of breath to Dr. Cullen

Douget, M.D., and was diagnosed with GERD. Doc. 12-1 at 1084. At subsequent visits, Plaintiff reported that she was suffering from severe lower back pain radiating into her leg. Doc. 12-1 at 791. It was further noted that Plaintiff had thoracic scoliosis and multilevel degenerative changes throughout her spine. Doc. 12-1 at 790.

In March 2020, Plaintiff reported neck tension on the right side through her jaw, radiating pain into her shoulder blade, and inability to turn her head to the left. Doc. 12-1 at 742. She was referred for an x-ray, which showed arthritis present at the C4 through C7 vertebrae, with a decrease in the normal curve of her neck. Doc. 12-1 at 743, 1684. In July 2020, Plaintiff told her primary care physician that she was "falling apart," and additional x-rays were ordered. Doc. 12-1 at 721.

In September 2020, Plaintiff reported neck pain, bilateral wrist pain, and burning sensations in multiple areas. Doc. 12-1 at 1653. In October 2020, Dr. Shobhana H. Banker, M.D., noted that Plaintiff had swelling on the left side of neck, and sent Plaintiff for a physical therapy consultation, where Plaintiff reported high pain and was assessed as having symptoms consistent with moderate disability. Doc. 12-1 at 696-699, 1649. Plaintiff continued physical therapy into December 2020, while reporting no improvement in her condition. Doc. 12-1 at 680-83 (physical therapy discharge note from December 2020 in which Plaintiff stated that the therapy had "not improved her condition"), 687 (physical therapy note from November 2020), 692-95 (the same from October 2020).

In August 2021, Plaintiff received a custom-fitted, hinged knee brace due to bilateral primary osteoarthritis in both knees. Doc. 12-1 at 1417. A few months later, she was also provided bilateral wrist splints upon reporting a sharp, electricity-like feeling shooting through

5

her right hand and forearm and aching of both wrists when lifting eight-to-ten pounds. Doc. 12-1 at 1499-1500, 1503.

In February 2022, Plaintiff reported constant pain in her hands and extreme shoulder pain with decreased range of motion to Dr. Banker. Doc. 12-1 at 1471, 1495. An x-ray of Plaintiff's right shoulder was unremarkable, but she was given an injection and a sling. Doc. 12-1 at 1474. At a follow-up appointment with Dr. Banker in May 2022, Plaintiff continued to report continuous, severe hand pain, and four weeks of occupational therapy was recommended. Doc. 12-1 at 151, 153, 169. After completing the recommended occupational therapy in July 2022, Plaintiff was seen at the VA emergency department in August 2022, complaining of severe pain in her left lumbar spine and upper buttock region. Doc. 12-1 at 122-24. Plaintiff was ultimately discharged in improved condition after being prescribed pain medication. Doc. 12-1 at 125.

In October 2022, Dr. Banker noted that an MRI of Plaintiff's lumbar spine showed disc material contacting the descending right L4, right L5, left S1, and right S1 nerve roots; likely synovial cysts arising from the anterior margin of the right L5-S1 facet joint contacting the right S1 and S2 nerve roots; multilevel neural foraminal narrowing with disc material contacting existing L4 nerve root; discogenic edema at the L2-3 endplates; and mild levoscoliosis of the lumbar spine. Doc. 12-1 at 90-91. When Plaintiff's complaints persisted at a follow-up appointment the next month, Dr. Banker referred Plaintiff to a pain management clinic. Doc. 12-1 at 78. At her pain management consultation, Plaintiff reported that medications provided only mild relief. Doc. 12-1 at 72. The pain management consultant, John Makinde, DHSc, PAC, diagnosed lumbar degenerative disc disease and facet degenerative joint disease. Doc. 12-1 at 73.

In October 2021, a state agency medical consultant (SAMC) Dr. Jean Sutherland, M.D. evaluated Plaintiff at the initial level of the disability determination process and concluded that Plaintiff's claimed physical impairments were not severe. Doc. 12-1 at 434-36. That same month, another SAMC, Dr. Yamir Laboy, Psy.D., concluded that Plaintiff's claimed mental impairments were not severe. Doc. 12-1 at 436-37.

On reconsideration approximately five months later, SAMC Dr. Kavitha Reddy, M.D., likewise found Plaintiff's purported physical impairments were not severe. Doc. 12-1 at 439-41. SAMC Dr. George Grubbs, Psy.D., reached the same conclusion regarding Plaintiff's mental impairments. Doc. 12-1 at 442-43.

*C. The ALJ's Findings*

In December 2022, an administrative law judge (ALJ) found that Plaintiff was not disabled. Doc. 12-1 at 41. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and had the severe impairments of (1) cervical degenerative disc disease; (2) bilateral knee osteoarthritis; and (3) depression. Doc. 12-1 at 29-30. The ALJ concluded, however, that none of Plaintiff's severe impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations. Doc. 12-1 at 33. The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, subject to certain limitations:

> [Plaintiff cannot] crawl or climb ladders, ropes, or scaffolds; less than occasionally (defined as 5% of the workday or less) crouch; occasionally stoop, kneel, and climb stairs; and needs to avoid unprotected heights. [Plaintiff] is able to perform simple, routine tasks with a specific vocational preparation of two or less.

Doc. 12-1 at 36. Based on this RFC, the ALJ concluded that there are jobs in significant numbers in the national economy that Plaintiff can perform and, thus, was not disabled. Doc. 12-1 at 40-41.

7

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). The burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

## III. ANALYSIS

Plaintiff argues the ALJ failed to properly develop the record and based the RFC assessment on his own lay interpretation of the medical evidence instead of the opinion of a medical expert. Doc. 14 at 17-26. Defendant responds that the ALJ properly interpreted the medical evidence in determining Plaintiff's capacity to work and was not required to derive the RFC assessment directly from a medical opinion. Doc. 17 at 4-9.

The RFC is an ALJ's assessment, based on all relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (quoting SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (holding that the RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence).

Under the current regulations, ALJs do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nor must an ALJ's RFC finding "mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, No. 3:21-CV-3164-C-BN, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (Horan, J.) (quoting *Carson v. Comm'r of Soc. Sec.*, 2022 WL

9

2525438, at *7 (E.D. Tex. May 25, 2022)), *adopted by*, 2022 WL 16927799 (N.D. Tex. Nov. 14, 2022) (Cummings, J.).

The absence of a medical opinion "'describing the types of work that the applicant is still capable of performing . . . does not, in itself, make the record incomplete.'" *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see also Myers v. Kijakazi*, No. 20-CV-445, 2021 WL 3012838, at *4 (W.D. Tex. July 16, 2021), *adopted by*, 2021 WL 4025993 (Sept. 3, 2021) (explaining that the law does not require a positive statement or positive evidence from a medical source indicating a claimant can perform the demands included in the RFC). Such opinions are simply one category of evidence that the ALJ considers in assessing a claimant's RFC. *Wills*, 2023 WL 4015174, at *3 (citing 20 C.F.R. § 404.1513). "[W]here no medical statement has been provided, [the court's] inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

Plaintiff argues that in formulating her RFC, the ALJ rejected the SAMCs opinions. Doc. 14 at 18; Doc. 12-1 at 38 ("[T]he evidence received at the hearing supports the finding that the claimant has severe physical and psychological limitations."). While Plaintiff's argument is technically true, it is nonetheless illogical, as each of the four SAMCs found that Plaintiff was had no severe impairments. Period. Had the ALJ not rejected the SAMCs opinions, the analysis would have ended there. That notwithstanding, "[t]he regulations do not prohibit the ALJ from assessing [Plaintiff's] RFC based on other record evidence when he finds all medical opinions to be unpersuasive." *West v. Kijakazi*, No. CV H-21-2395, 2022 WL 4137297, at *6 (S.D. Tex. Aug. 26, 2022), *adopted by*, 2022 WL 4138574 (Sept. 12, 2022). In this instance, the ALJ assessed Plaintiff's RFC based on her medical records, including x-rays, and Plaintiff's hearing

10

testimony. Doc. 12-1 at 37-38. *See, e.g.*, *Carson*, 2022 WL 2525438, at *7 (concluding that the ALJ did not err in finding all state agency opinions not persuasive and in formulating the RFC based on testimony, medication management, activities of daily living, and other medical evidence).

Here, in formulating the portion of Plaintiff's RFC related to her physical impairments, the ALJ noted Plaintiff's medical evidence and her own statements about the "intensity, persistence, and limiting effects" of her condition were "not entirely consistent." Doc. 12-1 at 37. In assessing the effects of her impairments, the ALJ considered Plaintiff's reports of "sharp pains in her shoulder blades and base of neck," "difficulty standing, walking, and running due to her knees," and ability "to walk for one to two hours before she needs to stop and rest." Doc. 12-1 at 37 (citing Ex. 8E and Plaintiff's testimony). The ALJ further noted that the medical evidence, however, did not support such restrictive limitations. As the ALJ pointed out: (1) x-rays of Plaintiff's knees revealed only mild degenerative change and a slight lateral patellar tilt, Doc. 12-1 at 37 (citing Ex. 2F); (2) that Plaintiff "ambulates without assistance" and physical exams often noted "no clubbing, cyanosis, or edema in her extremities," Doc. 12-1 at 37 (citing Exs. 2F and 5F); (3) Plaintiff's "musculoskeletal exams often showed a full range of motion." Doc. 12-1 at 37 (citing Ex. 2F).

Nevertheless, the ALJ's RFC included a number of work-related restrictions—Plaintiff "can never crawl or climb ladders, ropes, or scaffolds; less than occasionally crouch; occasionally stoop, kneel, and climb stairs; and needs to avoid unprotected heights." Doc. 12-1 at 37; *see West*, 2022 WL 4137297, at *7 (formulating a claimant's RFC in this way is not the ALJ impermissibly offering a lay opinion but "is actually the ALJ properly interpreting the medical evidence to determine [the claimant's] capacity for work") (citation omitted).

As for Plaintiff's psychological impairments, the ALJ concluded that they also were "not as restrictive as she alleges," finding support in the medical records that described Plaintiff's thought processes as either "linear and logical" or "organized" and her memory for past events and immediate recall as "intact." Doc. 12-1 at 38 (citing Ex. 2F). The ALJ also considered that Plaintiff "has not presented to an emergency department complaining of an acute exacerbation of psychological symptoms." Doc. 12-1 at 38. The Court further notes that the ALJ's findings regarding the limited extent of Plaintiff's psychological impairments is also supported by Plaintiff's testimony that she had not followed up with counseling or therapy. *See* Doc. 12-1 at 404-406. Based on the record evidence, which the ALJ indicated was interpreted with "the widest latitude possible," he restricted Plaintiff's RFC to "simple, routine tasks with a specific vocational preparation of two or less." Doc. 12-1 at 38; *see* West, 2022 WL 4137297, at *7.

In sum, the 1700-page record in this case is "replete with medical documents that spanned years." *Webster*, 19 F.4th at 720 (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)). The record reflects in determining Plaintiff's RFC, the ALJ reviewed Plaintiff's medical records dating from 2018 to 2022, the findings of Plaintiff's treating sources, and Plaintiff's testimony. And to Plaintiff's benefit, the ALJ also considered but rejected the SAMCs' opinions that Plaintiff's physical and psychological impairments were not severe. The bottom line is that "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (cleaned up) (quotation marks and citations omitted). Further, nothing in the record suggests the ALJ needed additional medical information to reach an informed decision about whether Plaintiff was disabled. Accordingly, the ALJ's decision was based on substantial evidence in a sufficiently developed record, and the ALJ did not err in assessing Plaintiff's RFC. *See Whitehead*, 820 F.3d at 779 ("[W]e cannot say

12

that no credible evidentiary choices or medical findings support the [ALJ's] decision.") (citation and internal quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner should be **AFFIRMED**.

**SO RECOMMENDED** on August 26, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).